# Roberts v. Commonwealth.

Nov. 8, 1940.

Joe Hobson, Special Judge.

B. M. James for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On January 26, 1940, the grand jury of Floyd County, Kentucky, returned an indictment jointly accusing appellant (a deputy constable), Sam Roberts, "Tom Akers or Tom Parsons and Jake Salisbury" of the statutory crime denounced by Section 1221 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, saying: "If any person or persons shall arrest or imprison another, or shall transport him, against his will, beyond the bounds of this Commonwealth, otherwise than according to law, or cause, or in any manner counsel, aid or abet in such arrest, imprisonment, or transportation, the person or persons so offending shall, on conviction thereof, be deemed guilty of felony, and shall be confined in the penitentiary not less than one nor more than twenty years." The language therein contained "or shall trasport him, against his will, beyond the bounds of this Commonwealth," are not pertinent to this prosecution, since the facts do not bring it within that category. The first paragraph of the indictment accused all the defendants therein as principals who arrested "unlawfully, willfully, feloniously, corruptly and maliciously" one Charles Justice without authority of law, and that they did "place him in the Floyd county jail"—all of which (as the indictment averred) was against his will or consent and when he was guilty of the commission of no offense against the law, either in the presence of defendants or otherwise, and that neither of them had any reasonable grounds for believing that he had committed a felony.

Paragraph 2 of the indictment charged a conspiracy between the three defendants to commit the offense named in its first paragraph, and that one of the three, but who was unknown to the grand jury, actually made the arrest, whilst the others were present and aided and abetted him in doing so, as well as in imprisoning him after the arrest. At his separate trial appellant was convicted and punished by confinement in the penitentiary for three years, upon which judgment was rendered after his motion for a new trial was overruled, to reverse which he prosecutes this appeal.

Seven reasons are contained in the motion for a new trial as constituting reversible errors, but four of them are neither referred to in any manner, nor are they argued in brief of counsel, and which clearly constitutes an abandonment of them, and which we think the record fully justifies. We will, therefore, confine this opinion exclusively to a discussion and determination of the other three, which counsel do discuss and present in their brief. They are: (1) That the court erred in admitting testimony proving the arrest and imprisonment of a number of others, both boys and girls, on the same occasion, and who were companions of Justice traveling with him in his automobile on the highway at the time his arrest was made; (2) that the evidence was insufficient to sustain the verdict, and for which reason appellant's motion for a peremptory instruction of acquittal should have been given, and (3) that the court erred in giving an instruction submitting the issue of appellant's aiding and abetting the one or ones of the defendants in the indictment who actually made the arrest, since it is contended that what he did, as testified to by himself, relieved him of responsibility either as a principal or as an aider and abettor. They will be disposed of in the order named.

1. It is argued that it was prejudicial error to permit testimony showing that all the others composing all of the occupants of the automobile were also arrested and imprisoned when their arrests—either lawful or unlawful—were not charged in the indictment, and which it is claimed constituted distinct offenses from the one contained therein, proof of which is ordinarily forbidden. But in making that argument counsel overlook the vast number of cases establishing an exception to the general rule contended for where the other offenses are so intermingled with the one on trial as to render it impossible to separate them—in which case it is permissible to prove all of the facts connected with the entire transaction. That exception is so well settled in the law as to require the citation of no precedent cases or text authority in its support. Here the arrests and imprisonment of all of those traveling in the automobile with Justice were made at the same time and they were transported to the jail together in the same car, and each of them delivered to the jailer at the same time. So that, the case comes completely within the exception

referred to. It is, therefore, clear that this ground is without merit.

2. The disposition of ground (2) calls for a brief but substantial statement of the testimony heard at the trial. There is some confusion in the proof as to whether or not the indicted defendant, Tom Akers or alias Tom Parsons, was present or participated in the arrest or imprisonment of Justice and his traveling companions, or whether he appeared upon the scene after they had been arrested by someone of the trio, composed of appellant, Jake Salisbury and Dewey Salisbury, the latter of whom was not indicted and whom the record discloses is now dead. But Akers or Parsons did appear upon the scene after the arrest was made and before the journey to the jail. Since, however, his guilt or innocence under the instant indictment is not now before us, no discussion of his participation in the charged offense is necessary, nor will it be made.

Justice was in the neighborhood of twenty years of age. In the early evening of December 31, 1938, he and his co-victims made a trip to Betsy Lane, a town or village in Floyd county, from whence they were returning, when a blowout of one of the tires of the automobile in which they were traveling occurred, and which was at about 9:00 P. M. The boys in the car were on the side of the road where the automobile was stopped fixing the tire when a truck drove up in which Jake Salisbury, a deputy sheriff, Dewey Salisbury, perhaps a deputy constable or deputy sheriff, and appellant, a deputy constable, were riding, and it stopped when its occupants inquired about the trouble. They were informed concerning it and—according to witnesses for the prosecution—they immediately retired behind the crippled automobile and engaged in a more or less subdued but brief conversation. One of the female occupants of the car who had not gotten out of it was asked and answered:

"Q. What conversation did you hear? A. They walked behind the car and they were talking about arresting us and one of them said: 'That was Will Reynolds' daughter' and said: 'he would pay off like a slot machine.'

"Q. Did they arrest you after that? A. Yes, they did."

Everyone who testified in the case confirmed the facts of arrest and later transportation of those arrested (composed of Justice and all of his companions in his car) to Prestonsburg, the county seat of the county, and their lodgment in jail. The same unanimity of testimony fails to reveal any sort of criminal or other charge against either of the persons arrested. On the contrary, it is uncontradictedly shown that neither of them was intoxicated, engaged in transporting liquor, violating any traffic rule, or committing any other offense within the catalogue of crimes. Even appellant himself states that he did not at that time, nor did he know at the time of the trial, why they were arrested. He stated, as did also his co-defendant in the indictment, Jake Salisbury, that neither of them, nor Dewey Salisbury, the other member of the arresting trio, had any warrant or other process authorizing the arrest or imprisonment of any of the occupants of Justice's car. So that, the proof shows—beyond any possibility of doubt, and without any contradictory intimation—that someone of the trio who drove up in the truck, and who later made the arrests and imprisonment of those arrested, glaringly and flagrantly violated the provisions of the statute supra.

But defendant testified not only that he did not know for what offense the parties were arrested, but that he also stated to Dewey Salisbury, one of the trio who had driven up in the truck, that he believed that none of the parties was guilty of any offense, and that he even went so far as to suggest their release, and which opinion he claims to have related to the jailer when the prisoners were delivered to that officer, but which he (the officer) and others contradicted. After the arrest the victims were loaded into the crippled automobile of Justice—which had been repaired in the meantime—and appellant drove it to the county seat and delivered his prisoners to the jailer. He does not deny having driven them to the county seat, but he does say that by the time he arrived there Jake Salisbury, Dewey Salisbury and, perhaps, Parsons, had already arrived with another quota of prisoners who were likewise similarly arrested, and that one of them delivered his cargo to the jailer. But, as we have said, the preponderance of the testimony clearly shows, including that of the jailer, that the delivery to him of Justice and his crowd was made by appellant. Appellant's excuse for driving

the victims to the county seat from the place of arrest was that he was forced to do so by his co-defendants, or one of them, and he seeks to be excused because he was thus duressed in all of his participations in the transaction, although he was then 37 years of age, stout and in good health so far as the record shows, was a deputy constable and a man of at least average intelligence. He testified to no overt acts on the part of the ''duresser'' whereby he was compelled to transport and imprison the victims, but his counsel seems to gather from the atmosphere, the clouds, or from some other source some glimpse of duress as emanating from and lingering in the request made by some of his co-defendants as officers, whereby he was induced to participate in the transaction to the extent he did, and which contention is urged, notwithstanding defendant himself was an officer (deputy constable) and of the age, experience and intelligence above described. In short, counsel's argument amounts to this—that the alleged request from his client's co-defendant, or defendants, created legal duress so as to relieve his client from guilt and consequent punishment. The contention is one with which we have not heretofore come in contact, and we have found, after diligent search, that no court nor text writer has ever advanced, much less approved it. We, therefore, decline to recognize any such stranger as a lawful participater in the correct administration of the criminal law.

Under the facts as so disclosed, it is strenuously argued that appellant's motion for a peremptory instruction of acquittal should have been sustained because of the failure of the proof to establish appellant's guilt either as a principal or as an aider and abettor—the latter of which was submitted to the court by one of the instructions complained of in the motion for a new trial and argued in brief, and which composes ground (3) discussed and disposed of post. The argument to sustain this ground (No. 2) is directed chiefly, if not entirely, to the act of arrest, it being contended that the weight of the proof shows that the actual arrest was made by Jakes Salisbury and not by appellant. However, we do not so appraise the testimony, since we interpret it as more than preponderating toward the establishment of the fact that appellant himself actually arrested some of the victims, or actively participated therein at the time it was done. But however that may

be, the statute is not alone directed against the character of arrest denounced therein, but it likewise denounces and punishes in the same way the act of "imprisoning" one who has been so wrongfully arrested, and appellant can not and does not attempt to dispute the fact that he actively participated in the imprisonment of the arrested victims by transporting them from the point where they were arrested to the county jail—the great preponderance of the testimony also showing that he delivered his prisoners to the jailer, who, we repeat, contradicted his statement that he requested that officer to release the victimized prisoners. It is, therefore, clear that by no sort of circumlocution may this ground be sustained.

3. Ground (3) is so completely without merit as to require but little, if any, discussion. What we have already said completely disposes of it adversely to counsel's contention. The offense charged is a felony. Section 1128 of our Statutes supra makes all accessories before the fact guilty and punishable to the same extent as principals. We construed and applied it in the case of Clarence McKinney v. Commonwealth, 284 Ky. 16, 143 S. W. (2d) 745. However, in this case there was a separate paragraph charging appellant as an aider and abettor of one or more of his codefendants who may have committed the crime as a principal. Clearly, therefore, it was competent to give the aiding and abetting instruction if the testimony authorized it, and which we find it did; hence our remark made at the beginning of the discussion of this ground.

Wherefore, for the reasons stated, the judgment is affirmed.